IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PROSHARES TRUST, PROSHARE ADVISORS, LLC PROFUNDS DISTRIBUTORS, INC., SEI INVESTMENTS DISTRIBUTION CO., AND LOUIS MARK MAYBERG | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | 09-CV-6386 (SHS) |
| - against - | ) | |
| | ) | |
| STEVEN AND SHERRI SCHNALL, | ) | ECF CASE |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A STAY OF ARBITRATION

David Gourevitch (Bar No. DG 8795)
Law Office Of David Gourevitch, P.C.
150 East 58th Street, 34th Floor
New York, NY 10155
Telephone: (212) 355-1300
Facsimile: (212) 317-2946
david@gourevitchlaw.com

*Counsel for Plaintiffs*
ProShares Trust, ProShare Advisors, LLC,
ProFunds Distributors, Inc., SEI Investments
Distribution Co., and Louis Mark Mayberg

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................iii

PRELIMINARY STATEMENT .................................................................. 1

STATEMENTS OF FACTS.......................................................................... 3

   A.  The Parties .................................................................................... 3

        1.    The Schnalls...........................................................................3

        2.    The Plaintiffs…………………………………..…………..4,5

   B.  Exchange Traded Funds and the UltraShort Fund………………………. 6

   C.  The ProShares Real Estate UltraShort Fund………………………...........6

   D.  The FINRA Arbitration Claim………………………………………….....7

Argument     THE ARBITRATION SHOULD BE
PERMANETLY STAYED…………………………………………..7

        A.    The Plaintiffs Will Suffer Irreparable Harm if Forced
To Arbitrate a Dispute It Has Not Agreed to Arbitrate,
And Defendants Can Show No Countervailing
Hardship………………………………………………………..7

        B.    The Plaintiffs Have a Strong Likelihood of Success
On the Merits ………………………………………..……………8

            1.    Arbitration is Solely a Matter of Contract and Parties
May Not Be Forced to Arbitrate Disputes They Did
Not Agree to Arbitrate……………………………………8

            2.    Whether An Agreement to Arbitrate Exists is For the
Courts to Decide………………………………………..9

            3.    No Agreements Exist Between the Parties to
Arbitrate Their Dispute……………………………………9

            4.    ProShares Trust and ProShare Advisors
Never  Entered an Arbitration Agreement
With the Schnalls………………………………….........10

5. The Schnalls' Claims Are Not Arbitrable
Under FINRA Rules.............................................11

    a. The Schnalls Are Not the Plaintiffs'
    Customers.............................................12

    b. The Claims Did Not Arise In Connection
    With Plaintiffs' Business With The Schnalls......16

6. Requiring Plaintiffs to Arbitrate Would Violate
The Plaintiffs' "Reasonable Expectations".................17

C. The Balance of Hardship Weighs
In the Plaintiffs' Favor.................................................18

D. The Arbitration Must be Stayed Until Any
Factual Disputes Are Resolved by Trial.............................18

CONCLUSION.................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1936)..... ................................................. 18

*AT&T Tech. Inc. v. Communications Works of America*
475 U.S. 643, 648 (1986)…......................................................................................... 8

*Bensadoun v. Jobe Riat*, 316 F.3d 171, 178 (2d Cir. 2003)................................................. 3

*BrookStreet Sec. Corp. v. Bristol Air, Inc.*
2002 U.S. Dist. Lexis 16784 (C.D. Cal. 2002)................................................................. 15

*BMA Fin. Servs. v. Guin*, 164 F.Supp.2d 813, 819 (W.D. La. 2001) ................................ 15

*Burns v. New Life Ins. Co.*, 202 F.3d 616, 620 (2d Cir. 2000) ......................................... 11

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*
348 F. Supp. 2d 217, 240 (S.D.N.Y. 2004)........................................................................ 7

*Citigroup Global Markets, Inc. v. VCG Special Opportunities*
Masters Fund Ltd., 2008 U.S. Dist. Lexis. 92043 …………………………………………..8

*Fleet Boston Robertson Stevens, Inc. v. Innovex, Inc.*
264 F.3d 770, 772 (8th Cir. 2001)...................................................................................15

*First Options of Chicago, Inc. v. Kaplan*, 514, U.S. 938, 943(1955)...................................8

*Herbert J. Sims Co., v. Roven*
548 F. Supp.3d 759, 765 (N.D. Cal. 2008)......................................................................14

*Investors Capital Corp. v. Brown*
145 F. Supp.2d 1302, 1306 (M.D. Fl. 2001)......................................................................15

*John Hancock Life Ins. v. Wilson*
254 F.3d 48, 53 (2d Cir. 2001)....................................................................................... 10

*Kidder Peabody & Co. v. Zinsmeyer Trusts P'Ship*
41 F.3d 861, 863-64 (2d Cir. 1994) ............................................................................... 11

*Litton Fin. Printing Div. v. Nat'l Relations Bd.*, 501 U.S. 190, 208 (1991). ...................... 9

*Malak v. Bear Stearns & Co., Inc.*
2004 U.S. Dist. Lexis 1422 (S.D.N.Y. 2004).................................................................14

*Marciano v. MONY Life Ins. Co.*
470 F. Supp. 2d 518, 258 (E.D. Pa. 2007)...............................................................11

*Maryland Cas. Co. v. Realty Advisory Bd. On Labor Relations*
107 F.3d 979, 985 (2d Cir. 1997)........................................................................ 8

*Merrill Lynch Inv. Managers. v. Optibase, Ltd.*
337 F.3d 125, 129 (2d Cir. 2003)........................................................................7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
473 U.S. 614, 626 (1985).................................................................... ........8

*North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999)........................ 7

*Oppenheimer & Co. v. Neidhardt*
56 F.3d 352 (2d Cir 1995)............................................................................... 18

*Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ..................................................... 11

*Sands Brothers & Co., Ltd. v. Ettinger*
2004 U.S. Dist. Lexis 4243 (S.D.N.Y. 2004) ......................................................... 12

*Sands Brothers & Co., Ltd. v. Nasser*
2003 U.S. Dist. Lexis 23406 (S.D.N.Y. 2004) ....................................................... 10

*SIPC v. Morgan Kennedy*
533 F.2d 1314, 1318 (2d Cir. 1976)...................................................................... 12

*Spear, Leeds & Kellogg v. Central Life Assurance Co.*
85 F.3d 21, 25 (2d Cir. 1996)............................................................................9

*The Phoenix Companies, Inc. v. Abrahamsen*
2005 U.S. Dist. Lexis 43615 (S.D.N.Y.2006)...........................................................11

*Volt Info. Sciences, Inc. v. Stanford Univ.*
489 U.S. 468, 479 (1989)........…...................................................................8

*Wheat, First Sec., Inc. v. Greene*
993 F.2d 814, 820 (11th Cir. 1993) .................................................................. 17

*World Financial Group, v. Steele*
2002 U.S. Dist. Lexis 17376 (S.D. Ind. 2002)...........................................................11

## STATUTES

*Federal Arbitration Act ("FAA"), 9 U.S.C., §§* ................................................................. 8

## SEC RULES

*Rule 15c3-1c* ................................................................................................................ 15

*Rule 17a5(4)* ............................................................................................................... 15

## FINRA

*By-Law I (rr)* ............................................................................................................... 11

*Rule 2270 (b)* .............................................................................................................. 15

*Rule 2310(e)* ............................................................................................................... 13

*Rule 2310-2(e)* ............................................................................................................ 13

*Rule 2520 (a)(3)* ......................................................................................................... 15

*Rule 10120-(8)* ........................................................................................................... 15

## FINRA CASES

*Lewis v. Credit Suisse First B. Nat'l Relations Bd.*
NASD Dispute Resolution Award ............................................................................ 12

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROSHARES TRUST, PROSHARE ADVISORS, LLC,<br>PROFUNDS DISTRIBUTORS, INC., SEI<br>INVESTMENTS DISTRIBUTION CO., AND<br>LOUIS MARK MAYBERG,<br><br>                 Plaintiffs,<br><br>  - against -<br><br>STEVEN AND SHERRI SCHNALL,<br><br>                 Defendants. | )<br>)<br>)<br>)<br>)<br>)  09-CV- 6386 (SHS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION FOR A STAY OF ARBITRATION

Plaintiffs ProShares Trust, ProShare Advisors, LLC, ProFunds Distributors, Inc.,

Louis Mayberg and SEI Investments Distribution Co. (collectively "the Plaintiffs")

respectfully submit this Memorandum of Law in support of their motion for a stay and

preliminary and permanent injunction pursuant to the Federal Arbitration Act, 9 U.S.C.

§1, *et seq.*, of an arbitration initiated against them before the Financial Industry

Regulatory Authority ("FINRA") by defendants Steven and Sherri Schnall ("the

Schnalls").

## PRELIMINARY STATEMENT

The Schnalls, wealthy and financially sophisticated investors, maintained a

brokerage account at LPL Financial.  Between October 2007 and November 2008, they

used options and exchange traded funds ("ETFs") to bet on the direction of the market

and sectors of the market. Specifically, they allegedly bought the ProShares UltraShort Real Estate Fund, an ETF, expecting that it would rise if the market fell. When the Fund did not perform as they expected, they initiated an arbitration before FINRA not only against their broker-dealer (LPL Financial), but also against the UltraShort Real Estate Fund's issuer (ProShares Trust), the advisor to the issuer (ProShare Advisors, LLC), the distributor of the Fund (SEI Investments Distribution, Co.), a corporate affiliate of the issuer and advisor that had nothing to do with the Fund (ProFunds Distributors, Inc.) and an officer of the issuer, advisor and corporate affiliate (Louis M. Mayberg). The gravamen of their claim is that the Fund did not operate as they anticipated because the Fund's prospectus did not properly disclose its risks.

The Schnalls cannot compel the Plaintiffs to arbitrate before FINRA. There is no agreement to arbitrate between the Schnalls and any plaintiffs and no privity of contract. ETFs, like stocks and bonds, are traded on stock exchanges, in anonymous arm's-length transactions at prices set by the market. The Schnalls do not (and cannot) allege that they were customers of the Plaintiffs; that they engaged in securities or other business transactions with or through the Plaintiffs; or that they ever communicated with the Plaintiffs or any employee of the Plaintiffs. In fact, the Schnalls are complete strangers to the Plaintiffs and to every person associated with the Plaintiffs. Two of the Plaintiffs are not even FINRA members. A third distributes mutual funds (not ETFs), which are not at issue here.

Prospectus disclosure cases, such as this, *always* have been brought in federal court. No court has *ever* required arbitration of this kind of claim. If the Plaintiffs can be forced to arbitrate this action before FINRA, the judiciary will be effectively stripped of

jurisdiction over a broad swath of securities litigation against similarly situated mutual funds, hedge funds, exchange traded funds, private equity funds and issuers. Indeed, this is the kind of overreaching about which the Court of Appeals warned in *Bensadoun v. Jobe Riat*, 316 F.3d 171, 178 (2d Cir. 2003).

## STATEMENT OF FACTS

### A. The Parties

#### 1. The Schnalls

From 1998 through 2006, Mr. Schnall was chairman, president and co-chief executive officer of New York Mortgage Co., which originated sub-prime and Alt-A loans. *See* Affidavit of Amy R. Doberman ("Doberman Aff.") Exh. C. New York Mortgage Co. funneled these risky loans to a publicly traded real estate investment trust ("REIT") that Schnall controlled as co-CEO, president and chairman, New York Mortgage Trust. *Id.* New York Mortgage Trust lost more than 95% of its value in the subprime meltdown. *Id.* Its shares tumbled from $110 to about $5. *Id.*

The Schnalls maintained a brokerage account at LPL Financial.[1] Through that account, they executed a speculative strategy. They, *inter alia*, used options and ETFs to place large bets on the direction of the market.

The Schnalls bought the ProShares UltraShort Real Estate Fund with the expectation that it would move inversely to the real estate market, *i.e.*, that it would rise if the real estate market fell. In their arbitration, the Schnalls allege that the Fund did not

---

[1]    LPL Financial had an arbitration agreement with the Schnalls and was and is a FINRA member. It therefore is not a party to this motion or to the underlying declaratory judgment action. LPL Financial is not affiliated with the Plaintiffs or under common control by or with the Plaintiffs.

perform as they expected and that the Fund's prospectus did not adequately disclose the risk associate with investing in the fund. This, thus, is a prospectus-disclosure case.[2]

### 2. The Plaintiffs

Plaintiff ProShares Trust is an investment company registered with the Securities and Exchange Commission ("SEC"), organized into eighty eight individual portfolios, each of which is an individual exchange traded fund. The UltraShort Real Estate Fund is one such fund. Its shares are traded on the New York Stock Exchange under the symbol SRS *Id.* ¶ 2.

ProShare Advisors, LLC is an investment advisor registered with the Securities and Exchange Commission ("SEC"); it serves as investment advisor to the Real Estate UltraShort Fund. *Id.* Neither ProShares Trust nor ProShare Advisors is or ever has been a member of FINRA. *Id.*

ProFunds Distributors, Inc. has no direct relationship with the UltraShort Real Estate Fund. It serves as the distributor for open-end mutual funds (not ETFs) advised by an affiliate of ProShare Advisors. *Id.* ¶ 3. Although ProFunds Distributors is an SEC registered broker-dealer and FINRA member, its business is very different from many broker-dealers. *Id.* Its business is limited to the distribution of mutual funds. *Id.* It does not offer brokerage services to the investing public. *Id.* It does not accept or disburse money on behalf of customers; or provide investment advice to customers. *Id.*

---

[2] In their Statement of Claim filed with FINRA, the Schnalls acknowledge that "[t]his is *not* a case involving an unsuitable recommendation; to the contrary, the idea to profit from a declining real estate market was the Schnalls and theirs alone." Schnalls' Statement of Claim at 6, which is attached as Exhibit A to the Doberman Aff.

Mr. Mayberg is an officer of ProShares Trust, ProShare Advisors and ProFunds Distributors, Inc. He is registered with FINRA in his capacity as an officer of ProFunds Distributors which, as noted above, distributes mutual funds, not ETFs. *Id.* ¶ 4.

SEI Investments Distribution Co., an SEC registered broker-dealer, distributes the ProShares UltraShort Real Estate Fund. Affidavit of Karen LaTourette ("LaTourette Aff.") ¶ 2. Although SEI Investments Distribution is a broker-dealer and FINRA member, its business is very different from most broker-dealers. *Id.* Its business is limited to distribution of mutual funds and ETFs. *Id.* It does not offer brokerage services to the investing public. *Id.* It has no investor-customers. *Id.* It does not maintain brokerage accounts; buy or sell securities; accept or disburse money on behalf of customers; or provide investment advice to customers. *Id.* Because ETFs such as the ProShares UltraShort Real Estate Fund are sold on stock exchanges, Doberman Aff. ¶ 5, SEI does not have a selling agreement with LPL Financial or with any other broker-dealer in connection with ETFs. LaTourette Aff. ¶ 4. LPL Financial, as required by law, provided the prospectus to the Schnalls. *Id.*

None of the Plaintiffs, or any person associated with the Plaintiffs, has ever met or spoken to the Schnalls; provided investment advice to them; bought or sold securities for them; received or disbursed money for them; or maintained a brokerage account on their behalf. Doberman Aff. ¶ 7; LaTourette Aff. ¶ 7. Plaintiffs have no contractual relationship with the Schnalls and have never transacted business of any kind with the Schnalls. *Id.* Indeed, the Schnalls are complete strangers to the Plaintiffs. *Id.*

## B. **Exchange Traded Funds and the UltraShort Fund**

ETFs, like stocks, are traded on a stock exchange in anonymous, arm's length transactions at prices established by the market. Doberman Aff. ¶ 5. In particular, the UltraShort Real Estate Fund trades on the New York Stock Exchange.

Because they bought shares of the UltraShort Real Estate Fund on the open market, the Schnalls do not and cannot allege that (a) they bought the Fund from the Plaintiffs or any person associated with the Plaintiffs; (b) they had or contemplated having a customer or other business relationship with the Plaintiffs or any person associated with Plaintiffs; (c) engaged in any other type of securities or business transaction by, with or through the Plaintiffs; (d) received money from, disbursed to or maintained money with the Plaintiffs or any person associated with the Plaintiffs or (e) ever met or spoke to the Plaintiffs or any person associated with the Plaintiffs. *Id.* ¶ 7. Indeed, LPL Financial (not the Plaintiffs) delivered the prospectus to the Schnalls, executed the Schnalls' orders, communicated with them about their brokerage account, and is the only proper party in a FINRA arbitration. *Id.*

In sum, the Schnalls are complete strangers to the Plaintiffs. *Id.*; LaTourette Aff. ¶ 7. There is no agreement between the parties to arbitrate and no privity of contract.

## C. **The ProShares Real Estate UltraShort Fund**

In the arbitration, the Schnalls allege that the ProShares Real Estate UltraShort Fund did not perform as they expected and that the Fund's prospectus did not adequately disclose that risk. They expected that the Fund would move inversely to the real estate market, *i.e.*, that the Fund would rise when and if the real estate market fell. Instead, they

allege that the Fund fell along with the market. However, the prospectus accurately and fully disclosed the Fund's investment objective as well as the associated risks. *Id.* ¶ 8.

### D.   The FINRA Arbitration Claim

On April 16, 2009, the Schnalls commenced an arbitration before FINRA (Case No. 09-02157) against LPL Financial, as well as ProShares Trust, ProShare Advisors, ProFunds Distributors, Louis Mayberg, and SEI Investments Distribution.[3]  Claims were made under the federal securities laws and for common law breach of fiduciary duty and duty to supervise.   The deadline for the Plaintiffs' answers was extended to July 16, 2009.  No answer has been filed.

## ARGUMENT

## THE ARBITRATION SHOULD BE PERMANENTLY STAYED

In an action seeking to enjoin an arbitration, the traditional criteria for granting injunctive relief apply:  "A party seeking a preliminary injunction must establish that (1) absent injunctive relief it will suffer irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) serious questions about the merits such that the balance of hardship weighs in their favor. *Merrill Lynch Inv. Managers, v. Optibase, Ltd.* 337 F.3d 125, 129 (2d Cir. 2003); *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999).[4]  We address each of these elements.

### A.   The Plaintiffs Will Suffer Irreparable Harm If Forced to Arbitrate A Dispute It Has Not Agreed to Arbitrate, And Defendants Can Show No Countervailing Hardship.

---

[3]     FINRA was created on July 30, 2007 to assume the regulatory functions of the NASD and New York Stock Exchange.  FINRA adopted the NASD's rules.

[4]     The standard for a permanent injunction is "essentially the same as for a preliminary injunction except that the plaintiff must actually succeed on the merits". *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F.Supp.2d 217, 240 (S.D.N.Y 2004)(citations omitted).

Courts have clearly held that a party is caused irreparable harm if it is forced to arbitrate a dispute where it had no contractual obligation to do so. *See Merrill Lynch Inv. Managers,* 337 F.3d at 129, *citing, Maryland Cas. Co. v. Realty Advisory Bd. On Labor Relations,* 107 F.3d 979, 985 (2d Cir. 1997) (unless arbitration is enjoined, movant would suffer irreparable harm by being forced to expend time and resources arbitrating an issue that is not arbitrable and as to which any award would not be enforceable); *Citigroup Global Markets, Inc. v. VCG Special Opportunities Masters Fund Ltd.,* 2008 U.S.Dist. Lexis 92043 (S.D.N.Y. 2008).

### B. The Plaintiffs Have a Strong Likelihood of Success on the Merits

#### 1. Arbitration is Solely a Matter of Contract and Parties May Not Be Forced to Arbitrate Disputes They Did Not Agree to Arbitrate

The Federal Arbitration Act ("FAA"), 9 U.S.C., §§ 1 *et seq.* governs arbitrations involving interstate commerce. Although the public policy embodied in the FAA favors arbitration, "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *AT&T Tech. Inc. v. Communications Works of America,* 475 U.S. 643, 648 (1986). "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985). "Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit ... [and] they may limit by contract the issues which they will arbitrate." *Volt Info. Sciences, Inc. v. Stanford Univ.,* 489 U.S. 468, 479 (1989). *See also First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1955) ("Arbitration is simply a matter of contract between

the parties; it is a way to resolve disputes – but only those disputes – the parties have agreed to submit to arbitration.").

## 2. <u>Whether An Agreement to Arbitrate Exists Is For the Court to Decide</u>

The question of "whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court." *Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.*, 501 U.S. 190, 208 (1991). *See also AT&T Tech*, 475 U.S. at 649 (determining whether a contract creates a duty to arbitrate a particular issue is an issue for the courts to decide."); *Bensadoun*, 316 F.3d at 175, *quoting, inter alia, Spear, Leeds & Kellogg v. Central Life Assurance Co.*, 85 F.3d 21, 25 (2d Cir. 1996). A contrary result might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.

## 3. <u>No Agreement Exists Between the Parties to Arbitrate Their Dispute</u>

The Schnalls do not have an agreement with the Plaintiffs to arbitrate disputes. On the contrary, they are strangers to the Plaintiffs. Doberman Aff. ¶ 7; LaTourette Aff. ¶ 7. ProShares Trust's business is limited to offering ETFs. ProShare Advisors' business is limited to advising ProShares Trust and the Funds it comprises. ProFunds Distributors' business is limited to distributing mutual funds (not ETFs). SEI Investments Distribution's business is limited to distributing mutual funds and ETFs. *Id.*

None of the Plaintiffs maintains brokerage accounts for or on behalf of the Schnalls; bought or sold ETFs or other investment products for or on behalf of the Schnalls; held or custodied securities, cash or other financial instruments for or on behalf of the Schnalls; or provided investment advice to the Schnalls. *Id.* Similarly, no employee of the Plaintiffs has ever communicated with the Schnalls about investments or securities

transactions or provided the Schnalls with investment advice. In their arbitration, the Schnalls do not claim otherwise. Rather, the Schnalls' claim that they can arbitrate against the Plaintiffs is based entirely on the Plaintiffs' alleged roles in the issuance and distribution of the Fund.

### 4. ProShares Trust and ProShare Advisors Never Entered an Arbitration Agreement With the Schnalls

ProShares Trust and ProShare Advisors never entered an arbitration agreement with the Schnalls. Absent an express agreement to arbitrate, they cannot be compelled to do so. *See John Hancock Life Ins. v. Wilson*, 254 F.3d 48, *53* (2d Cir. 2001). Neither ProShares Trust nor ProShare Advisors is or ever has been a FINRA member; neither, therefore, can be compelled to arbitrate before FINRA.

This Court squarely rejected a considerably more compelling attempt to force non-FINRA members to arbitrate before FINRA. In *Sands Brothers & Co., Ltd. v. Nasser*, 2003 U.S. Dist. Lexis 23406 (S.D.N.Y. 2004), Nasser was a customer of Sands Brothers & Co. Ltd., a broker-dealer. Nasser's broker recommended that he invest in a private placement of an affiliate of the broker-dealer, SB Venture Capital. When the investment failed, Nasser initiated a FINRA arbitration against, *inter alia*, Sands Brothers & Co, Ltd. (the broker-dealer), SB Venture Capital (the issuer of the private placement), Sands Brothers Asset Management, LLC (the managing member of SB Venture Capital) and Sands Brothers Asset Management, Ltd. (the managing member of Sands Brothers Asset Management, LLC). The Court held that only the broker dealer could be

compelled to arbitrate before FINRA. *Id.* at \*3. Since the other entities were not members of FINRA, they were not subject to FINRA Arbitration. *Id.*[5]

### 5. The Schnalls' Claims Are Not Arbitrable Under FINRA Rules

ProFunds Distributors and SEI Investments Distribution were and are FINRA members. Mr. Mayberg was and is registered with FINRA only in his capacity as an officer of ProFunds Distributors (which distributes mutual funds and not ETFs). Under certain circumstances, the FINRA Code of Arbitration ("the Code") can bind its members and registered persons to arbitrate. *See e.g. Kidder Peabody & Co. v. Zinsmeyer Trusts P'ship*, 41 F.3d 861, 863-64 (2d Cir. 1994). To determine whether the Code governs the dispute between the Schnalls and ProFunds, SEI Investments and Mr. Mayberg, the Court must interpret the Code as it would a contract under applicable state law, giving effect to the ordinary meaning of the language used. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).[6]

---

[5] Nasser argued, *inter alia*, that the entities could be subjected to arbitration as "persons associated with" the broker-dealer. The Court held that only natural persons can be associated persons. *Sands Bros.* at \*9 & n. 6, *citing, Burns v. New Life Ins. Co.*, 202 F.3d 616, 620 (2d Cir. 2000). The By-Laws of FINRA define the term a "person associated with a member" to be a natural person. *See* By-Law Art. I (rr). *See also Marciano v. MONY Life Ins. Co.*, 470 F. Supp. 2d 518, 258 (E.D. Pa. 2007) (the term "associated person" is limited to natural persons and does not include entities). Nasser also argued that the entities affiliated with the broker-dealer entities might be compelled to arbitrate under a provision of the Code of Arbitration referring to "certain others." However, the language appeared in old versions of the Code and not in the current iteration. *Sands Bros.* at \*9, *citing, e.g. World Financial Group. v. Steele*, 2002 U.S. Dist. Lexis 17376 (S.D. Ind. 2002). Thus, entities affiliated with a broker-dealer cannot be compelled to arbitrate as "certain others." *Id. See also The Phoenix Companies, Inc. v. Abrahamsen*, 2005 U.S. Dist. Lexis 43615 (S.D.N.Y. 2006) (rejecting efforts to compel non-FINRA members to arbitrate).

[6] In *John Hancock Life Insurance Co.*, 254 F.3d at 55, the Court ruled that the NASD Code of Arbitration does not evidence a "clear and unmistakable" intent to submit the issue of arbitrability to arbitrators where only one party is an NASD member and the parties do not have separate agreements to arbitrate. In so holding, the Court explained, "Although John Hancock may be required to submit to arbitration…we are bound … to preserve John Hancock's right to ask a court to make that determination." *Id.*

The applicable provision is Rule 10301(a) of the Code, which governs whether a matter is required to be arbitrated:

> Any dispute, claim or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated person shall be arbitrated under this Code as provided by any duly executed and enforceable agreement or upon the demand of the customer.

This Rule, thus, contains two prerequisites before a FINRA member can be compelled to arbitrate. First, a complainant must be a "customer" of either the FINRA member or, at least, of an "associated person" of that member. Second, the "dispute, claim or controversy must arise in connection with the member's business and the activities of the associated person with the complainant." *John Hancock Life Ins. Co.,* 254 F.3d at 58. The Schnalls cannot satisfy either prong.

### a. The Schnalls Are Not The Plaintiffs' Customers

The first requirement for arbitration is that the dispute arose between a member and a "customer" of the member with respect to that transaction. *See Lewis v. Credit Suisse First Boston Corp.,* NASD Dispute Resolution Award, Docket No. 03-06140, 2004 NASD Arb. Lexis 338 (Feb. 2, 2004). "An investor is a 'customer' of a brokerage house and is able to compel the brokerage house to arbitrate only for conduct that falls within the scope of the specific account between the investor and the brokerage house". *Sands Bros. & Co., Ltd. v. Ettinger,* 2004 U.S. Dist. Lexis 4243 (S.D.N.Y. 2004) at *4, quoting, *Bensadoun,* 316 F.3d at 178; *cf. John Hancock Life Ins. Co.,* 254 F.3d at 60 (customer must be either a customer of the member or at least a customer of a "person associated" with the member).[7]

---

[7] In *SIPC v. Morgan Kennedy*, 533 F.2d 1314, 1318 (2d Cir. 1976), the Court adopted the dictionary definition of a "customer" as "one who regularly or repeatedly makes purchases, or has business dealings

The Schalls were not "customers" of the Plaintiffs or of any person "associated" with the Plaintiffs. The Schnalls used their LPL Financial brokerage account to buy and sell shares of the UltraShort Fund from anonymous contra-parties in an open stock market. They did not buy shares of the Fund from or sell shares of the Fund to any of the Plaintiffs. Indeed, the Schnalls are total strangers to the Plaintiffs.

Viewed most favorably, the Schnalls' theory seems to be that because they are customers of one broker-dealer (LPL Financial), they can compel any other broker-dealer or associated person of another broker-dealer to arbitrate before FINRA.[8] However, *Bensadoun* rejected that approach as overreaching. There, a broker moved to stay an arbitration because the investor maintained the accounts at issue with another broker. If so, the Second Circuit held, "[the investors] were not [the broker's] customers under NASD rules." *Id.* at 177. The alternative would lead to overreaching and expand FINRA arbitration beyond its proper boundaries:

> Otherwise, every purchaser of shares in a mutual fund and every beneficiary of a pension fund would arguably be "customers" of every investment institution with which those funds did business and would be entitled to demand arbitration under the NASD. *Id.*

Indeed, *Bensadoun* presented a more compelling argument for arbitration than offered here. Although the account at issue in the arbitration was not managed by Bensadoun, the customer had a second account with Bensadoun and argued that that broker-customer

---

with a ... business house." This definition emphasizes a pattern of purchases and sales by the customer from the broker-dealer.

[8] FINRA Rule 2310-2(e) which the Schnalls also cite does not apply to the Plaintiffs. The Rule applies to members "when making recommendations or accepting orders." *See* Statement of Claim at 7, attached as the Doberman Aff. as Exhibit A. The Plaintiffs never accepted an order or made a recommendation to the Schnalls. The Schnalls also seek to apply Rule 2310(e) to the prospectus. The requirements for the prospectus are regulated exclusively by the SEC, *see, e.g.,* Form N-1A under the Securities Act of 1933; Investment Company Act of 1940, and cannot be altered or amended by FINRA.

relationship established by the second account sufficed to compel Bensadoun to arbitrate a dispute involving the first account. The Court viewed this as overreaching:

> [I]f these accounts are separate, [the customer] would be unable to rely on the existence of his personal account to demand arbitration of issues relating to a different account outside the scope of [his] relationship with [the broker]. It would be an odd result if, merely by virtue of holding a personal account, an individual could force a dealer to arbitrate claims as to any other account the dealer has, even if the individual was not a customer of that account. That would open the arbitral forum to pension fund beneficiaries and mutual fund purchasers as long as they had some unrelated account with the broker or at the brokerage firm with which the fund did business.

*Id.* at 178. There is even less basis to require arbitration here. The Schnalls seeks to use their account at one brokerage firm to compel arbitration with two totally unrelated firms where the Schnalls never maintained a brokerage account, with which they transacted no business and had no communications, and to which they were complete strangers.

Following *Bensadoun*, this Court refused to find a customer relationship between an investor in an investment fund and the broker-dealer where the investment fund maintained its brokerage account. *See Malak v. Bear Stearns & Co., Inc.*, 2004 U.S. Dist. Lexis. 1422 (S.D.N.Y. 2004). Malak invested in a British Virgin Island investment fund. The fund maintained its brokerage account at Bear Stearns. The fund manager lost the money and fabricated account statements to conceal the losses. When the fraud was discovered, Malak initiated an NASD arbitration against Bear Stearns. The Court found "no doubt that Malak [was] neither a 'customer' of a 'member' firm nor of an 'associated person of a member.'" *Id.* at *5. He never communicated with Bear Stearns directly and never transferred money there. *Id.* at *6.

Similarly, in *Herbert J. Sims Co., Inc. v. Roven*, 548 F.Supp.3d 759, 765 (N.D. Cal 2008), another application to stay an arbitration, the court found a customer

relationship lacking because, the "[i]nvestors themselves did not [have] any communications, written or oral, with Plaintiff [or the] Plaintiff's employee." The same reasoning mandates an injunction here, since the Schnalls had no communications with the Plaintiffs.

FINRA and the Securities and Exchange Commission, likewise, envision a customer relationship between the "customer" and broker-dealer or a person associated with the broker dealer. [9] For example, FINRA Conduct Rule 2270(b) defined the term "customer" as "any person who, in the regular course of such member's business, has cash or securities in the possession of such member." Elsewhere, FINRA defines the "customer" of a broker-dealer as any person for whom securities are purchased or sold or to whom securities are purchased or sold whether on a regular way, when issued, delayed or future delivery basis." FINRA Rule 2520(a)(3). This follows the SEC's definition of a "customer," *see*, 17 C.F.R. 240.15c3-1(c)(6) (defining customer as "any person from whom, or on whose behalf, a broker-dealer has received, acquired or holds funds or securities for the account of such person...); 17 C.F.R. 240.17a5(c)(4) (defining customer to include "any person for whom the broker or dealer holds securities for safekeeping or as collateral or whom the broker or dealer carries a free credit balance..."). Each of these

---

[9]     The only guidance the Code of Arbitration Procedures gives as to the definition of a "customer" is to specify that "[t]he term 'customer' shall not include a broker or dealer." Rule 10120-(8). This is a limited exclusion; it is not definition. A reading of this to include anyone who is not a broker or a dealer as a customer has been rejected as overly broad. *See e.g. Fleet Boston Robertson Stevens, Inc. v Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001) (argument that "by negative inference, this definition means a 'customer' is everyone who is not a broker or dealer is too broad); *Brookstreet Sec. Corp. v. Bristol Air, Inc.*, 2002 U.S. Dist. Lexis 16784 (C.D. Cal. 2002) at *22 (exclusion of broker-dealers does not constitute definition of customer); *Investors Capital Corp. v. Brown*, 145 F.Supp.2d 1302, 1306 (M.D. Fl. 2001) (same); *BMA Fin. Servs. v. Guin*, 164 F. Supp.2d 813, 819 (W.D. La. 2001) ("[s]uch a boundless definition would surely upset the reasonable expectations of NASD members.").

definitions envisions a customer relationship between the individual and the broker-dealer.

The Eighth Circuit relied on FINRA Rule 2270 in refusing to compel arbitration. In *Fleet Boston Robertson Stephens, Inc. v. Innovex*, 264 F.3d 770 (8th Cir. 2001), a broker-dealer provided financial advice to an ailing company seeking a merger partner. The broker-dealer later sued for fees. The company moved to compel arbitration arguing that it was a "customer" of the broker-dealer. Because NASD Rule 2270 defined a "customer" as one who has cash or securities in possession with the member, the court held that the term does apply to one seeking only financial advice without receiving investment or brokerage related services." *Id.* at 773. The same reasoning and result should apply here. *See also Brookstreet Sec. Corp. v. Bristol Air, Inc.*, 2002 U.S. Dist. Lexis 16784 at *22 (N.D. Ca. 2002).

### b. The Claims Did Not Arise In Connection With Plaintiffs' Business with the Schnalls

The second requirement for arbitration is that the conduct at issue must arise in connection with the broker-dealer's business with the customer. A customer can compel arbitration with a broker-dealer only for conduct that falls within the scope of the specific account between the investor and the brokerage house. *See Sands Bros. & Co. v. Ettinger*, 2004 U.S. Dist. Lexis 4245 (S.D.N.Y. 2004); *accord, Bensadoun,* 316 F.3d at 178. Even if a brokerage relationship exists, an investor cannot demand arbitration on an issue that falls outside the scope of that relationship. *See Sands Bros*, 2004 Lexis 4245, at *3.

The Schnalls cannot satisfy this requirement. Since they never maintained any account with the Plaintiffs, their claims cannot have arisen in connection with such an account.

### 6. Requiring Plaintiffs to Arbitrate Would Violate the Plaintiffs' "Reasonable Expectations"

The duty to arbitrate should not be construed so broadly as "to upset the reasonable expectations of FINRA members." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd*, 2008 U.S. Dist. Lexis 92043(S.D.N.Y. 2008) at *12, quoting Wheat, First Sec., Inc. v. Greene*, 993 F.2d 814, 820 (11th Cir. 1993). Prospectus disclosure cases such as this have *always* have been brought in federal court. No court, as far as we can find, has *ever* required arbitration of this kind of claim. Requiring arbitration here would do significant injustice to the "reasonable expectations" of the Plaintiffs as well as other broker-dealers. *Id.* Indeed, it would alter radically the existing legal landscape. If Plaintiffs can be forced to arbitrate a prospectus disclosure case, then all cases allegedly based on an SEC-filing can be brought in arbitration so long as they involve an entity that has an affiliated broker-dealer, such as a mutual fund or no SEC-filing (no prospectus), exchange traded fund. This is the kind of overreaching that the Court of Appeals warned against in *Bensadoun v. Jobe Riat*. By way of example, if the Schnalls prevail, then any customer of a broker-dealer can bring a case in arbitration against a mutual fund, hedge fund, private equity fund or issuer, so long as they have a broker-dealer associated with them.[10]

---

10      If the Schnalls prevail, a customer of a broker-dealer who purchased stock in UBS or Merrill Lynch could bring an arbitration against not only the broker-dealer that executed the trades, but also UBS or Merrill Lynch as issuers on the theory that they, too, are broker dealers.

## C. The Balance of Hardship Weighs in the Plaintiffs' Favor

With respect to this last prong, the balance of hardship weighs heavily in the Plaintiffs' favor. If they are compelled to arbitrate, they will give up their rights under the U.S. Constitution and federal statutes to be heard before a judge, to obtain full and fair discovery, and to a trial by jury. A party's waiver of the constitutional right to a jury must be knowing and voluntary. *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1936). The question of whether the Schnall's dispute is arbitrable should be reviewed and resolved before depriving Plaintiffs of their constitutional rights.

## D. The Arbitration Must Be Stayed Until Any Factual Disputes Are Resolved by Trial

The Plaintiffs have proffered evidence amply demonstrating that the Schnalls were not their customers and that the allegations do not arise in connection with any business relationship with the Schnalls. At a minimum, these create factual disputes that can only be resolved at trial. *See e.g. Bensadoun,* 316 F.3d at 175; *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352 (2d Cir 1995).

## CONCLUSION

For the foregoing reasons, the Plaintiffs' application for a preliminary and permanent stay of the FINRA arbitration commenced by the Schnalls should be granted.

Dated: July 20, 2009

Respectfully submitted,

David Gourevitch (Bar No. DG 8795)
Law Office Of David Gourevitch, P.C.
150 East 58th Street, 34th Floor
New York, NY 10155
Telephone: (212) 355-1300
Facsimile: (212) 317-2946
david@gourevitchlaw.com

*Counsel for Plaintiffs*
*ProShares Trust, ProShare Advisors, LLC,*
*ProFunds Distributors, Inc., SEI*
*Investments Distribution Co., and*
*Louis Mark Mayberg*